UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

PENSION BENEFIT GUARANTY CORP.,
    Plaintiff,

v.

UFORMA/SHELBY BUSINESS
FORMS, INC., *et al.*,
    Defendants.

Case No. 1:13-cv-266

Dlott, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

This matter is before the Court on the motion to dismiss of defendants 2840 Sprouse Drive, 10001 Alliance Road, and 2322 Clifton Avenue (collectively the Property defendants) and Samuel L. Peters, LLC and Peters Ohio, LLC (collectively the LLC defendants) (Doc. 19), plaintiff's response in opposition (Doc. 29), and the Property and LLC defendants' reply memorandum. (Doc. 30).

**I. Factual and Procedural Background**

Plaintiff, Pension Benefit Guaranty Corporation (PBGC), brings this action under the Employment Retirement Income Security Act (ERISA), 29 U.S.C. § 1001, *et seq.*, against defendants[1] to collect unfunded benefit liabilities and unpaid pension insurance premiums and termination premiums. PBGC alleges its ERISA claims arise due to the termination of two pension plans: the Uforma/Shelby Business Forms, Inc. Hourly Employees' Retirement Plan (the Hourly Plan) and the Uforma/Shelby Business Forms, Inc. Salaried Employees' Retirement Plan (the Salaried Plan). PBGC also brings this action under 29 U.S.C. § 1368 to enforce the statutory liens against the Hourly Plan and the Salaried Plan for unfunded benefits liabilities.

---

[1] PBGC names as defendants Uforma/Shelby Business Forms Inc., Unknown Controlled Group Members of Uforma/Shelby Business Forms, Inc., Miami Systems Corporation, Autron, Inc., Bertek Systems Inc., Specialty Envelope, Inc., Samuel L. Peters, LLC, Peters Ohio, LLC, Samuel L. Peters, the Trust of Samuel L. Peters, 2840 Sprouse Drive, 10001 Alliance Road, and 2322 Clifton Avenue. (Doc. 1).

(Doc. 1).

By way of background, PBGC is a wholly owned United States government corporation established under 29 U.S.C. § 1302(a) to administer and enforce the pension plan termination insurance program established by Title IV of ERISA. PBGC generally becomes a trustee of a pension plan when the plan terminates without sufficient assets to pay benefits. Subject to certain statutory limitations, PBGC pays the plan's unfunded benefits from PBGC's insurance funds. ERISA provisions provide that on the plan termination date, a contributing sponsor of a pension plan and members of the contributing sponsor's "controlled group" incur joint and several liability to PBGC for the total amount of the plan's unfunded benefit liabilities, unpaid pension insurance premiums, termination premiums, and accrued interest. In the event any liable party neglects or refuses to pay PBGC, a lien arises in the amount of liability.

Here, PBGC alleges that Uforma established two pension plans in June 1979: the Hourly Plan and the Salaried Plan. Uforma was the contributing sponsor of both plans which are covered by the pension plan termination insurance program established under Title IV of ERISA. On January 12, 2010, PBGC issued notices to Uforma of its determination that the plans should be terminated. PBGC and Uforma entered into an agreement on April 15, 2010, that the plans were terminated as of March 31, 2006. PBGC alleges that as of March 31, 2006, either Samuel L. Peters or the Trust of Samuel L. Peters owned the Property defendants. (Doc. 1, ¶¶ 21-26, 35-37).

The Property and LLC defendants now seek to have PBGC's claims against them dismissed under Rules 9(a), 12(b)(5), and 12(b)(6) of the Federal Rules of Civil Procedure.[2] These defendants assert that the claims against the Property defendants must be dismissed as

---

[2] All other defendants have answered the complaint. *See* Doc. 20.

they are real property tracts and not entities capable of being sued. Further, both the Property and LLC defendants[3] contend that PBGC's claims against them are barred by the pertinent statute of limitations. For the following reasons, the Court recommends that the motion to dismiss be granted.

**II. Standards of Review under Rules 9(a), 12(b)(5), and 12(b)(6)**

Federal Rule of Civil Procedure 9 provides, in pertinent part:

> When a party desires to raise an issue as to . . . the capacity of any party to sue or be sued or the authority of a party to sue or be sued, the party desiring the issue shall do so by specific negative averment, which shall include such supporting particulars as are peculiarly within the pleader's knowledge.

Fed. R. Civ. P. 9(a). Whether an entity has the capacity to be sued in federal court is governed by Fed. R. Civ. P. 17(b), which provides in relevant part that for all parties not an individual or corporation, capacity is determined " bythe law of the state where the court is located. . . ." Fed. R. Civ. P. 17(b)(3). *See also Hendricks v. Office of Clermont Cty Sheriff*, No. 1:03-cv-572, 2006 WL 2850515, at *3 (S.D. Ohio Sept. 29, 2006) (applying Ohio law in determining whether defendant had capacity to be sued). In raising the defense of capacity, defendant bears the burden of showing by "specific negative averment [and] supporting particulars" that it is not an entity capable of being sued. Fed. R. Civ. P. 9(a).

Rule 12(b)(5) provides that an action may be dismissed for "insufficient service of process." Fed. R. Civ. P. 12(b)(5). Generally, the plaintiff bears "the burden of establishing [the service's] validity." *Metro. Aloys Corp. v. State Metals Indus., Inc.*, 416 F. Supp.2d 561, 563 (E.D. Mich. 2006). Courts may look to "record evidence" and "uncontroverted affidavits" in determining whether plaintiffs have met this burden. *Id.*

---

[3]The LLC defendants are alleged to own the three real estate properties. (Doc. 19 at 5-6; Doc. 19, Ex. 1, Attachment A).

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The Court must accept all well-pleaded factual allegations as true but need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). While a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 566 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557.

Additionally, a court may consider exhibits attached to the complaint or motion to dismiss under certain circumstances. *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001) (citing *Nieman v. NLO, Inc.*, 108 F.3d 1546 (6th Cir. 1997)). Though, generally, a court may not consider matters outside of the pleadings when ruling on a motion to dismiss without converting it into a Rule 56 motion for summary judgment, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim." *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

With these principles in mind, the Court reviews PBGC's complaint.

### III. Resolution

A. <u>The Property defendants are not properly named defendants</u>.

Defendants[4] argue that PBGC has improperly named the Property defendants and aver that 2840 Sprouse Drive and 10001 Alliance Road are pieces of real estate. (Doc. 19 at 7, citing Doc. 19, Ex. 1, ¶¶ 1-2, Declaration of Samuel L. Peters).[5] Defendants assert that 2840 Sprouse Drive is real property in Henrico County, Virginia that Samuel L. Peters conveyed to Samuel L. Peters, LLC on December 2, 2010. *See* Doc. 19, Ex. 1 at 9-13, Commonwealth of Virginia Land Record Instruments. Defendants further assert that 10001 Alliance Road is real property in Hamilton County, Ohio that Samuel L. Peters conveyed to Peters Ohio, LLC on December 2, 2010. *See* Doc. 19, Ex. 1 at 4-8, State of Ohio and Commonwealth of Kentucky Land Record Instruments. Defendants aver that 2322 Clifton Avenue is real estate that was sold by Samuel L. Peters on August 3, 2011. (Doc. 19 at 7). Defendants argue that although PBGC refers to these properties as "trades or businesses" operated by Ohio LLCs in the complaint, *see* Doc. 1, ¶¶ 12-16, they are not legal entities under Ohio law and are therefore improperly named as defendants. In support, defendants cite to *Patterson v. V & M Auto Body*, 589 N.E.2d 1306 (Ohio 1992), where the Ohio Supreme Court held that a sole proprietorship was improperly named as a

---

[4] For purposes of this analysis and for the sake of brevity, the term "defendants" refers to the Property and LLC defendants unless otherwise specified.

[5] Defendant Samuel L. Peters supports his declaration with exhibits such as deeds and land record instruments for 10001 Alliance Road and 2840 Sprouse Drive. *See* Doc. 19, Ex. 1, Attachment A. The Court may consider these documents without converting the motion to dismiss into a motion for summary judgment as they are matters of public record. *See Commercial Money Center, Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007). *See also Gregory v. CitiMortgage, Inc.*, 890 F. Supp.2d 791, 796 (E.D. Mich. 2012) (documents related to property ownership were matters of public record properly considered in ruling on motion to dismiss). However, defendant Peters' declaration itself will not be considered as it is not referenced in PBGC's pleading. *See id.* The Court notes that Rule 9(a) does not require the movant to produce evidence in support of their specific negative averment as "a specific denial based on information and belief should suffice if there is no reason to doubt the good faith of the pleader." 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1294 (3d ed. 2010).

5

defendant as it had "no legal identity separate from that of the individual who owns it." *Id.* at 1308. Defendants argue that because the properties named by PBGC here have no legal identity separate from those of Samuel L. Peters or limited liability companies, they are not legal entities with the capacity to be sued under *Patterson*, regardless of whether they are characterized as "trades or businesses" by PBGC. (Doc. 19 at 9). Defendants thus assert PBGC's claims against the Property defendants must be dismissed under Rule 9(a).

In this same vein, defendants maintain that the properties cannot be sued as they are not capable of being served with process under Ohio law. Defendants rely on Ohio Rule of Civil Procedure 4.2, which provides a complete list of legal entities that may be served; properties are not included in this list. *See* Doc. 19 at 9-10, citing Ohio Civ. R. P. 4.2. Defendants further argue that because this is not an *in rem* action, the properties are incapable of being sued. (Doc. 19 at 10, citing *Shaffer v. Heitner*, 433 U.S. 186, 196 (1977) (noting that "*in rem* jurisdiction is traditionally based on attachment or seizure of property. . . .")). Defendants thus contend that because this action is not recognized as an *in rem* action by the State of Ohio, dismissal of PBGC's claims against the Property defendants is warranted under Rule 12(b)(5) for failure to effect proper service. (*Id.*, citing Ohio Rev. Code § 2703.14 (listing recognized *in rem* actions)).

In response, PBGC does not address the state law issues raised by defendants, but asserts that the Property defendants are properly named entities under ERISA provision 29 U.S.C. § 1301(b)(1) as they are "trades or businesses" under the common control of defendants Samuel L. Peters and the Trust of Samuel L. Peters. (Doc. 29 at 9-12).[6] PBGC notes that the purpose of the controlled group rule is to prevent employers from circumventing their obligations under ERISA. (Doc. 29 at 9-10, citing cases). PBGC maintains that where an individual or entity rents or leases

---

[6]PBGC maintains that the Property defendants as alleged "trades or businesses" of the controlled group are jointly and severally liable for damages under 29 U.S.C. §§ 1307 and 1362. (Doc. 29 at 9, citing *PBGC v. East*

6

buildings or commercial properties, "the rental or leasing activity constitutes a trade or business for purposes of controlled group liability under Title IV of ERISA." (Doc. 29 at 10, citing cases). As the complaint alleges that Samuel L. Peters leased the Property defendants, *see* Doc. 1, ¶¶49, 55, PBGC asserts that they are properly named as "trades or businesses" and thus liable under ERISA. (Doc. 29 at 11, citing *Central States, Southeast and Southwest Areas Pension Fund v. Messina Products, LLC*, 706 F.3d 874, 879-84 (7th Cir. 2013)).

PBGC further asserts that the legal form of the Property defendants is not determinative as to whether they are "trades or businesses" under ERISA, but that the form goes to the issue of the identity of the party who may be held liable and to what extent. (Doc. 29 at 11, citing *Connors v. Incoal Inc.*, 995 F.2d 245 (D.C. Cir. 1993)). PBGC contends that Samuel L. Peters and the Trust of Samuel L. Peters are liable under ERISA because the Trust, through Mr. Peters, owned and leased the Property defendants. (Doc. 29 at 12, citing cases). PBGC thus maintains that the Trust and Mr. Peters were properly sued and served on behalf of the Defendant properties. The Court will first address PBGC's assertions.

At the outset, the Court notes that PBGC appears to concede in its response brief that Mr. Peters and the Trust are the liable "trades or businesses," not the Property defendants. *See* Doc. 29 at 12. PBGC's argument is that: (1) the Trust, through Mr. Peters, rented the properties; (2) this rental activity constituted a "trade or business" for ERISA liability purposes; and (3) Mr. Peters and the Trust are the liable parties. *Id.* In making this argument, PBGC has failed to address any of defendants' arguments as to whether the Property defendants are legal entities capable of being sued under Ohio law and, further, has conceded that Mr. Peters and the Trust – not the Property defendants – are the liable parties. Moreover, PBGC states that "[e]ven if the Court finds it proper to strike the [Property d]efendants as a matter of form, those defendants

---

*Dayton Tool and Die Co.*, 14 F.3d 1122, 1126-27 (6th Cir. 1994)).

7

would remain in the case as part of the [t]rust. . . ." (Doc. 29 at 13-14). It is difficult to interpret PBGC's representations as anything other than a concession that the Property defendants are not the proper parties under ERISA.

Moreover, review of the 21 cases cited by PBGC reveals that none of those matters involved an instance where a court found that real property was a proper defendant in an ERISA case as part of a "controlled group." *See* Doc. 29 at 9-12, n.29-35. This is not surprising as the Court's own extensive research failed to reveal any case where a piece of real estate, as opposed to its individual or corporate owner, was held to be a liable party under ERISA (or even named as a defendant). While the undersigned agrees that ERISA provides for holding entities liable for property ownership under the controlled group rule, it is the owning entity that is the properly named defendant – not the property itself.[7]

In contrast, defendants' argument that the Property defendants are not legal entities capable of being sued under Ohio law and must be dismissed pursuant to Fed. R. Civ. P. 9(a) is well-supported. Defendants' uncontroverted averments and the public record documents attached to defendants' motion demonstrate that the Property defendants are tracts of real property. *See* Doc. 19 and Doc. 19, Ex. A. Under Ohio law, real property may not be named as a defendant except in *in rem* and quasi-*in rem* actions. *See* Ohio Civ. R. P. 4.2; Ohio Rev. Code § 2703.14; *Shaffer*, 433 U.S. at 196. *See also Benner v. Benner*, 58 N.E. 569, 570 (Ohio 1900) (discussing general distinction between *in personam* and *in rem* actions and noting that actions against property cannot be considered *in personam* for purposes of jurisdiction). It is undisputed

---

[7] *See Central States, Southeast and Southwest Areas Pension Fund v. Messina Products, LLC*, 706 F.3d 874, 878 (7th Cir. 2013) (individuals and corporate entity were engaged in "trade or business" for ERISA purposes by owning and leasing properties); *PBGC v. Don's Trucking Co., Inc.*, 309 F. Supp.2d 827 (E.D. Va. 2004), *aff'd*, *PBGC v. Beverly*, 404 F.3d 243 (4th Cir. 2005) (partner-owners of leased properties liable under ERISA as partnership was a business under common control of employer). *See also Int'l Painters and Allied Trades Ind. Pension Fund v. KKB, L.L.C.*, 421 F. Supp.2d 71 (D.D.C. 2006); *Pension Ben. Guar. Corp. v. Am. Shelter Indus.*,

8

that this ERISA action is not an *in rem* or quasi-*in rem* matter. The Court therefore finds that the Property defendants are parcels of real property and are not properly named as defendants in this action.

To the extent PBGC alleges these properties are sole proprietorships (Doc. 1, ¶ 49), Ohio law provides that "[a] sole proprietorship has no legal identity separate from that of the individual who owns it. . . . The individual who does business as a sole proprietor under one or several names remains one person, personally liable for all his obligations." *Patterson*, 589 N.E.2d at 1308. Mr. Peters and the Trust, as the alleged owners of the Property defendants, are therefore the parties to be named for any potential liability flowing from these properties. Further, to the extent that Ohio Civ. R. P. 4.2 provides the exclusive list of entities which may be served and does not permit service on real property, the Property defendants have not been properly served.[8] As PBGC has failed to refute defendants' supported arguments, dismissal of its claims against the Property defendants is appropriate. The Court further notes that PBGC has asserted that this dismissal will not prejudice its prosecution of this matter as the properties will "remain in the case as part of the Trust. . . ." (Doc. 29 at 14).

For these reasons, the undersigned finds that PBGC's claims against the Defendant properties should be dismissed pursuant to Fed. R. Civ. P. 9(a) as they are not legal entities capable of being sued and for failure to effect service under Fed. R. Civ. P. 12(b)(5).

B. PBGC's claims against the Property and LLC defendants are barred by the statute of limitations.

It is undisputed that PBGC's ERISA claims are subject to the six-year statute of limitations provided by 29 U.S.C. § 1306(e)(6). It is further undisputed that the statute of

---

*Inc.*, 821 F. Supp. 1465, 1468-69 (M.D. Fla. 1993) (ownership of real property can be considered a trade or business within a control group and entity owning property can be held liable under ERISA).

[8]The Court recognizes that as the properties are not entities capable of being served, that this finding is

9

limitations for PBGC's claims began to run when the "cause of action arose," *i.e.*, the date the underlying pension plans were terminated. 29 U.S.C. § 1603(e)(6). *See also PBGC v. Ferfolia Funeral Homes Inc.*, 835 F. Supp.2d 416, 420-21 (N.D. Ohio 2011) (statute of limitations for ERISA actions brought by PBGC begins to run upon termination of pension plans). The pension plans here were terminated on March 31, 2006. (Doc. 1, ¶ 26). PBGC therefore had until March 31, 2012, to file its complaint.[9] However, PBGC entered into tolling agreements with defendants Uforma/Shelby Business Forms Inc., Miami Systems Corporation, Autron, Inc., Bertek Systems Inc., Specialty Envelope, Inc., and the Trust of Samuel L. Peters (the signatory defendants) whereby these defendants agreed to toll the statute of limitations for a total of 390 days, or to April 25, 2013.[10] *See* Doc. 19, Ex. B; Doc. 29, Ex. 12 (March 2012 Tolling Agreement and August 2012 Amended Tolling Agreement). Accordingly, the parties agree that the complaint filed on October 24, 2012 was timely filed against the signatory defendants. The limited issue is therefore whether PBGC's claims against the Property and LLC defendants are barred as they were not parties to the tolling agreements.

Defendants argue that the claims are barred as PBGC failed to raise claims against them within the six-year statute of limitations provided by 29 U.S.C. §1303(e)(6). While defendants acknowledge the tolling agreements apply to above signatory defendants, they maintain the agreements do not apply to them as they were not parties to either agreement. Defendants

---

extraneous, but it is included in the interest of completeness.

[9] PBGC concedes that the six-year statute of limitations for its claims, absent the existence of any tolling agreements, would have run in March 2012. *See* Doc. 29 at 13.

[10] The Court may consider the tolling agreements without converting the instant motion to dismiss into a motion for summary judgment as PBGC clearly had notice of the agreements and relied upon them in drafting the complaint. *See* Doc. 29 at 13 (PBGC asserts it relied on the tolling agreements in waiting to bring suit until October 2012). *See also Wolper v. Hotel Europe*, 552 F. Supp.2d 687, 690-91 (N.D. Ohio 2008) (citing *Greenberg v. Life Ins. Co.*, 177 F.3d 507, 514 (6th Cir. 1999), *Weiner*, 108 F.3d at 89, and *Cortec Indust., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991)) (holding that courts can consider tolling agreements in determining motion to dismiss where substance and content are central to the claims and plaintiff has notice of the information contained in the agreements).

10

maintain that they are not subject to the tolling agreements' terms because the documents explicitly refer only to defendants Uforma/Shelby Business Forms Inc., Miami Systems Corporation, Autron, Inc., Bertek Systems Inc., Specialty Envelope, Inc., and the Trust of Samuel L. Peters, but make no mention of any other party being bound by their terms. Lastly, defendants argue that PBGC was aware of the existence of the Property and LLC defendants prior to the running of the initial six-year statute of limitations, but that PBGC opted not to include these entities in the tolling agreements and its failure to exercise due diligence in this regard requires dismissal of its claims against the Property and LLC defendants. (Doc. 19 at 5-7, 11-12).

In opposition, PBGC maintains that the tolling agreements apply to the Property and LLC defendants because: (1) counsel for Samuel L. Peters made certain representations about the Property defendants;[11] (2) the agreements include the Trust of Samuel L. Peters as a party and were signed by Mr. Peters on behalf of the trust; and (3) PBGC relied on the tolling agreements in choosing not to file suit against the Property defendants prior to April 25, 2013. PBGC further asserts that it timely filed suit against the Property and LLC defendants as they are successors to the trust. (Doc. 29 at 13).

A tolling agreement is a contract. Therefore, the Court must look to state law to determine whether the instant tolling agreements apply to the Property and LLC defendants. *See Carolina Cas. Ins. Co. v. Sharp*, 940 F. Supp.2d 569, 576-77 (N.D. Ohio 2013) (applying Ohio

---

[11] Given the above determination that the Property defendants are not legal entities capable of being sued, the court declines to consider the evidence submitted by PBGC in support of its assertion that Mr. Peters' counsel made representations that subject those defendants to the tolling agreements. *See* Doc. 29, Ex. 4 (August 12, 2010 Letter from Mr. Peters' counsel to PBGC counsel). The Court further notes that even if it were to consider this evidence, there is no representation made therein that would persuade the Court that the Property defendants are subject to the tolling agreements and no basis for equitably tolling these claims given PBGC's failure to take reasonable steps to protect its potential claims. *See Egerer v. Woodland Realty, Inc.*, 556 F.3d 415, 425 (6th Cir. 2009) (for equitable tolling to apply there must be evidence that defendant acted to prevent plaintiff from asserting its claims in a timely manner and that plaintiff was duly diligent in seeking to protect its claims).

11

law in analyzing tolling agreement); *Delano v. Abbott Laboratories*, 908 F. Supp.2d 888, 895 (W.D. Tenn. 2012) (citing cases where state contract law was applied to examine tolling agreements). Under Ohio law, the Court must determine as a matter of law the interpretation of a contracts' terms, including whether its terms are ambiguous. *Savedoff v. Access Group, Inc.*, 524 F.3d 754, 763 (6th Cir. 2008) (citations omitted). "The role of courts in examining contracts is to ascertain the intent of the parties." *Id.* (quoting *City of St. Marys v. Auglaize Cty. Bd. of Comm'rs.*, 875 N.E.2d 561, 566 (2007)). "The intent of the parties is presumed to reside in the language they choose to use in their agreement." *Graham v. Drydock Coal Co.*, 667 N.E.2d 949, 952 (1996). "Where the terms in a contract are not ambiguous, courts are constrained to apply the plain language of the contract." *City of St. Marys*, 875 N.E.2d at 566; *accord Alexander v. Buckeye Pipe Line Co.*, 374 N.E.2d 146, 150 (1978) ("[W]here the terms in an existing contract are clear and unambiguous, this court cannot in effect create a new contract by finding an intent not expressed in the clear language employed by the parties.").

The tolling agreements here explicitly provide that the parties to the agreements are limited to PBGC, Uforma/Shelby Business Forms Inc., Miami Systems Corporation, Autron, Inc., Bertek Systems Inc., Specialty Envelope, Inc., and the Trust of Samuel L. Peters. *See* Doc. 19, Ex. B; Doc. 29, Ex. 12. The agreements further provide that these parties "concluded that it would be beneficial to allow [them] additional time to explore a negotiated resolution of the matters" related to the alleged liability of the signatory defendants. (Doc. 19, Ex. B at 1, 5; Doc. 29, Ex. 12 at 2, 5). As to the terms agreed upon, the agreements provide:

> 1. The period of time allowed under any statute of limitations for PBGC to commence an action or proceeding to collect from Uforma, Miami Systems Corporation, Autron Incorporated, Bertek Systems, Inc., PRINTSouth Corporation, Specialty Envelope, Inc., and Trust of Samuel L. Peters any liability arising under ERISA, or any other law, with respect to the [pension] plans shall be tolled for [180 and 210] days . . . or for such additional period as may be

established by subsequent written agreement of the Parties.

2. The statute of limitations under any Federal or state law will not be asserted or relied upon by Uforma, Miami Systems Corporation, Autron Incorporated, Bertek Systems, Inc., PRINTSouth Corporation, Specialty Envelope, Inc., Trust of Samuel L. Peters as a defense against any judicial proceeding commenced by the PBGC, on its own behalf, or on the behalf of the [pension] Plans, to collect any liability arising under ERISA with respect to the Plans, provided that such proceeding is commenced on or before the last day allowed under such statute of limitations as extended by the tolling period provided under th[ese agreements] and any additional periods established by subsequent written agreement of the Parties.

(Doc. 19, Ex. B at 2-3; Doc. 29, Ex. 12 at 2-3).

Under basic contract law principles, the tolling agreements are not enforceable against the LLC and Property defendants as they were not signatories. *See Benjamin v. Pipoly*, 800 N.E.2d 171, 185 (Ohio Ct. App. 2003). Moreover, the clear and unambiguous terms of the agreements reflect that their signatories' intent was to extend the statute of limitations to allow further negotiations between PBGC and the signatory parties only. There is nothing in the agreements that supports a determination that any party aside from those explicitly named in the agreements – Uforma, Miami Systems Corporation, Autron Incorporated, Bertek Systems, Inc., PRINTSouth Corporation, Specialty Envelope, Inc., and Trust of Samuel L. Peters – are bound by their terms. PBGC has cited to no authority that would permit any other interpretation of the agreements aside from their plain language, which limits their application to the signatory defendants.

To the extent PBGC relied upon representations regarding the Property and LLC defendants' relationship with the Trust of Samuel L. Peters in choosing not to file suit against them by March 31, 2012, PBGC fails to explain why it did not seek to include these defendants as parties to the tolling agreements. The Court accordingly finds that PBGC's claims against the Property and LLC defendants must be dismissed under Fed. R. Civ. P. 12(b)(6) as they are

barred by the statute of limitations provided by 29 U.S.C. § 1303(e)(6).

### IT IS THEREFORE RECOMMENDED THAT:

Defendants' motion to dismiss PBGC's claims against 2840 Sprouse Drive, 10001 Alliance Road, 2322 Clifton Avenue, Samuel L. Peters, LLC, and Peters Ohio, LLC (Doc. 19) be **GRANTED**.

1/21/14
Date

*Karen L. Litkovitz*
KAREN L. LITKOVITZ
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

PENSION BENEFIT GUARANTY CORP.,     Case No. 1:13-cv-266
    Plaintiff,

                                              Dlott, J.
v.                                               Litkovitz, M.J.

UFORMA/SHELBY BUSINESS
FORMS, INC., *et al.*,
    Defendants.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

15